UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14 CR 00229 |
| v. | |
| KABIR KASSAM | Judge Thomas M. Durkin |

**MEMORANDUM ORDER AND OPINION**

After contracting COVID-19, Defendant Kabir Kassam filed a motion for compassionate release under 18 U.S.C. § 3582, or, in the alternative, for a recommendation that the Bureau of Prisons ("BOP") place him on home confinement. R. 425. For the following reasons, Mr. Kassam's motion is denied.

**Background**

Mr. Kassam pled guilty in August 2016 to one count of mail fraud. He was sentenced to 70 months' imprisonment—well below the applicable 151-188 month Sentencing Guidelines range—and he and his co-defendants were ordered to pay over $11,300,000 in restitution. Mr. Kassam self-surrendered to the BOP on March 9, 2018, and the BOP calculates his projected release date as March 24, 2022.[1] Mr. Kassam is currently housed at Duluth FPC in Duluth, Minnesota. He contracted

---

[1] In his opening brief, Mr. Kassam said that his release date is March 23, 2023. R. 425 at 4. However, the Government's response brief notes that a BOP representative has said that Mr. Kassam is eligible for early release pursuant to 18 U.S.C. 3621(e) because he completed a substance abuse program, meaning that his projected release date is actually March 24, 2022, and that he may be eligible for home detention as soon as September 24, 2021. As of the date of this order, BOP's website reflects the same information. *See* www.bop.gov/inmateloc (last visited February 9, 2021).

COVID-19 while incarcerated but has since recovered and does not report any lingering symptoms.

## Standard

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal" and 30 days have passed without the BOP filing a motion on the defendant's behalf. In determining whether a sentence reduction under § 3582 is appropriate, courts consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of establishing his entitlement to relief under this provision. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

## Analysis

The Government concedes that Mr. Kassam has exhausted his administrative remedies and that the BOP has not pursued his request for early release. The Government contends, however, that no extraordinary and compelling reasons exist to justify Mr. Kassam's release, and that the Section 3553(a) factors counsel against it. The Court addresses the parties' arguments on each issue in turn.

***Extraordinary and compelling reasons and policy statements.*** In determining what constitutes an extraordinary and compelling reason to modify a

person's sentence, courts consider the guidance contained in the U.S. Sentencing Guidelines Manual at U.S.S.G. § 1B1.13. The Application Notes describe extraordinary and compelling reasons as including medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The notes also include the following catch-all provision: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. cmt. n.1(d). The Seventh Circuit held in *United States v. Gunn* that the Sentencing Commission's policy statement on what constitutes an extraordinary and compelling reason for compassionate release does not apply to prisoner-initiated motions. 980 F.3d 1178, 1180 (7th Cir. 2020). But the court also noted that "substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons.'" *Id*. The court continued that a "judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. Accordingly, the Sentencing Commission's analysis remains instructive, and guides the Court's decision here.

Mr. Kassam claims that his weight constitutes an extraordinary and compelling reason for his release. The CDC has determined that an individual with a body mass index ("BMI") of 30 or above is at an increased risk for severe illness due to COVID-19. Mr. Kassam's medical records indicate that his BMI was 28.9 in December 2020, and 29.1 in November 2020. R. 430 at 1; R. 426 at 87. Mr. Kassam

3

does not dispute that his BMI is below 30.[2] He argues instead that there is no indication that someone with a BMI slightly below 30 has a "demonstrably lower risk" of suffering severe effects from COVID-19 than someone with a BMI of 30 or more. While it is true that the CDC has said that the higher one's BMI, the greater the risk of death from COVID-19, R. 431 at 2, the Court declines to question the CDC's judgment that a BMI below 30 does not merit as much concern as a BMI above 30. Accordingly, because Mr. Kassam's BMI is below 30, he is not at an increased risk for severe illness from COVID-19, and his weight is therefore not an extraordinary and compelling reason for release.

Mr. Kassam also claims that he had high blood pressure in 2018 and 2019, and that his family has a history of heart disease and high cholesterol. But as the Government points out, Mr. Kassam's blood pressure readings from 2020 were all within the normal range of 120/80. *See* R. 429 at 13 (citing R. 425 at 75, 87, 111). Furthermore, nothing in Mr. Kassam's medical records indicates that he personally suffers from heart disease or high cholesterol.[3] And in any event, current CDC

---

[2] According to Mr. Kassam's opening brief, the last time his BMI was 30 or above was in November 2017, when his BMI was 30.11. *See* R. 425 at 12 (citing R. 426 at 1).

[3] According to Mr. Kassam, his medical records indicate that the BOP has not yet administered cholesterol and glucose tests scheduled months ago. R. 431 at 5 (citing R. 426 at 110-11). To the extent the BOP has not performed these tests as of this writing, the Government is ordered to ask the BOP when it expects to administer them, and share that information with counsel for Mr. Kassam.

4

guidance does not identify high blood pressure or family history of heart disease/high cholesterol as conditions that increase the risk of severe illness from COVID-19.[4]

Finally, Mr. Kassam argues that his COVID-19 diagnosis itself justifies his early release. But his medical records state that as of November 12, 2020, Mr. Kassam's infection was "resolved." R. 426 at 67. The fact that Mr. Kassam seems to have recovered from COVID-19 "cuts against granting the relief he requests," *United States v. Bartlett*, 2021 WL 54024, at *2 (N.D. Ill. Jan. 6, 2021), especially since he does not claim to suffer from any lingering symptoms or other effects of the virus. And while Mr. Kassam points out that there is limited research concerning reinfection rates and also notes that he might suffer from long-term problems associated with COVID-19 down the road, speculation about these issues cannot form the basis for relief. *See United States v. Thompson*, 2020 WL 7771141, at *2-3 (N.D. Ill. Dec. 30, 2020) (defendant's professed concern about reinfection did not justify compassionate release); *see also Gold*, 459 F. Supp. 3d at 1120 ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence") (quoting *United States v. Allegra*, No. 15 CR 243, R. 232 at 7 (N.D. Ill. Apr. 13, 2020)).[5] Additionally, as of this writing,

---

[4] Mr. Kassam does not dispute the CDC guidance, but he does argue that studies cited by the CDC appear to have found an association between hypertension and severe illness from COVID-19. *See* R. 431 at 3-5. The Court declines to opine on these studies, especially because Mr. Kassam's medical records show that his blood pressure readings throughout 2020 were within normal range.

[5] To the extent Mr. Kassam also argues that he should be released due to the mere existence of the COVID-19 pandemic in the country generally, R. 425 at 6-8, or as a result of BOP's overall handling of the virus, *id.* at 8-10, neither constitute an

5

Duluth FPC is reporting just one active case of COVID-19, suggesting that the chances Mr. Kassam contracts the virus again are slim.[6] *See* bop.gov/coronavirus (last visited February 9, 2021).

In sum, whether the Court views Mr. Kassam's arguments separately or together, there is simply no extraordinary and compelling reason to justify his early release.

***Section 3553(a) factors***. Even if there were an extraordinary and compelling reason to grant Mr. Kassam the relief he requests, the Section 3553(a) factors counsel against it. An analysis under 18 U.S.C. § 3553(a) considers the defendant's history and characteristics, the seriousness of his offense, the risk of recidivism he poses, the time remaining on his sentence, the quality of his release plan, the impact of the BOP's efforts to maintain the safety of inmates, and the types of sentences available. *United States v. Colon*, 2020 WL 7260804, at *4 (N.D. Ill. Dec. 10, 2020).

The Court starts with the factors that weigh in Mr. Kassam's favor—*i.e.* Mr. Kassam's history and characteristics, the risk of recidivism, and the quality of his release plan. Mr. Kassam has a positive track record of helping others inside and

---

"extraordinary and compelling reason" to reduce a sentence. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Fakhouri*, 2020 WL 7698371, at *3 (N.D. Ill. Dec. 28, 2020) (same). A contrary finding would imply that all inmates should be released, which is neither appropriate nor feasible.

[6] Mr. Kassam points out that more than 200 inmates and nearly 20 staff members at Duluth FPC have tested positive for COVID-19 since the pandemic began. But what is relevant for purposes of this motion is the number of active cases currently at the facility. As stated, that number is one.

6

outside of prison and there is no indication in the record that he is a violent person. Furthermore, the risk of recidivism is low because Mr. Kassam has little to no criminal history other than his conviction for mail fraud. Finally, Mr. Kassam's release plan is encouraging since he has a wife and two children, and a letter from a future employer suggests that he has a job lined up in the event that he is released.

Several favors weigh against Mr. Kassam's release, however. To begin, Mr. Kassam committed a serious and extensive crime. Indeed, Mr. Kassam admitted to stealing millions of dollars of taxpayer funds at the expense of low-income public school children, defrauding the federal government, and bilking school districts around the country. R. 210-1. The sentencing court separately found that Mr. Kassam obstructed justice, and correctly noted that he abused the public trust by lining his pockets with money meant for public education. R. 354 at 14.

Turning to Mr. Kassam's sentence, the sentencing court imposed a term of imprisonment of 70 months, significantly below the guideline range of 151-188 months. Early release at this time would deemphasize the seriousness of Mr. Kassam's crime and disrespect the principles of justice. And while Mr. Kassam has already served more than 50 percent of his sentence, his projected release date is more than a year away (though he is possibly eligible for home detention in September 2021), and releasing him early could diminish the general deterrent effect of his original sentence. That is especially true here since Mr. Kassam's wrongdoing involved defrauding low-income students. As the sentencing court said, "[t]he students here who did not receive the benefits are the true victims. These are low-

income kids who needed this help . . ." R. 354 at 3. Early release of an inmate under such circumstances would send the wrong message to the community.

Finally, the very few active cases of COVID-19 at Duluth FPC suggest that that the BOP has been able to contain the virus and provide inmates like Mr. Kassam with appropriate medical treatment. To this point, Mr. Kassam's medical records show that prison officials promptly moved him into quarantine after he was diagnosed with COVID-19 and checked his body temperature frequently. R. 426 at 77. Mr. Kassam has fully recovered from the virus with no lingering symptoms to date, and the one active case at Duluth FPC is nowhere near the case levels seen at other BOP institutions. On balance, the § 3553(a) factors counsel against releasing Mr. Kassam early.[7]

***Recommendation to the BOP***. Mr. Kassam asks the Court to recommend to the BOP that he be placed on home confinement in the event the Court concludes, as it has, that immediate release is not appropriate. But for the reasons set forth in the § 3553(a) portion of the Court's analysis above, and because Mr. Kassam has already

---

[7] Mr. Kassam separately asks the Court to find that he is not a "danger to the safety of any other person or to the community," citing the policy statement in U.S.S.G. § 1B1.13(2). But the Seventh Circuit has ruled that the "policy statement does not apply to petitions under the First Step Act, like [Kassam's], initiated by an inmate rather than the Director of the Bureau of Prisons." *United States v. Burnley*, 2021 WL 276129, at *2 (7th Cir. Jan. 27, 2021) (finding that it was a mistake for a district court to determine, based on the policy statement, whether an inmate was a danger to others ). And in any event, the Court has determined that there are no extraordinary and compelling reasons to justify Mr. Kassam's release, and that the § 3553(a) factors do not weigh in his favor. For all these reasons, the Court need not decide whether Mr. Kassam is a danger to others pursuant to the policy statement in U.S.S.G. § 1B1.13(2).

contracted and recovered from COVID-19, the Court leaves the decision regarding home confinement to the Warden's sole discretion.

## Conclusion

Even assuming there is an "extraordinary and compelling" reason to justify Mr. Kassam's early release, the Section 3553(a) factors counsel against it. Accordingly, Mr. Kassam's motion for compassionate release, R. 425, is denied and the Court declines to issue a recommendation that he be placed on home confinement.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: February 11, 2021